Davis, J.,
delivered tbe opinion of tbe court:
Tbe question of law presented in tbis case is a simple one, as we bave for a guide tbe noted case of Masterton v. The Mayor (7 Hill.,N.Y.,61),wbicbbassofrequentlybeencitedwithapproval. After Congress bad authorized tbe construction of a building-destined to contain tbe Library of Congress bids were invited for granite, and plaintiffs were successful in obtaining a contract, wbicb they were prosecuting successfully, when tbe policy of tbe Government was changed, and by a statute their contract was arbitrarily annulled.
They, therefore, are entitled to recover, upon tbe portion of tbe contract remaining unperformed, tbe difference between tbe contract price and tbe cost to them of completing tbe contract engagement, making reasonable deduction for tbe less time engaged and for release from tbe care, trouble, risk, and responsibility attending a full execution of tbe contract, and excluding all remote, contingent, or collateral interests. (Speed’s Case, 2 C. Cls. R., 429; affirmed 8 Wall., 77.) Examining tbe evidence upon tbis theory, we bave found tbe measure of recovery to which plaintiffs are here entitled unless there be other matter of defense.
It appears that Stout, Hall, and Baugs, intending to enter tbe quarrying business, agreed to form a corporation in Maine for that purpose. Tbe agreement was oral, informal, and not specific in detail. Hall owned a quarry at Somes Sotad (Mount Desert) and a stone yard in Belfast; Bangs controlled tbe Dodlin Hill Company, which owned a quarry at Norridge-wock, Me.; Stout does not appear to bave been a quarrymau; it may be safely assumed that be furnished capital. There was not time to complete tbis scheme before bids for tbe Library were due, so tbe three agreed to bid as copartners, and associated themselves for tbis purpose and for carrying out tbe contract if awarded to them, expecting to execute it largely through tbe agency of their contemplated company.
After their bid bad been accepted they reorganized tbe Dod-lin Hill Company, changing its name to tbe Maine Granite and Improvement Company, made Bangs treasurer and Hall manager, increased tbe capital stock, and owned a controlling-interest. Thereafter Hall managed bis quarry and yard at Somes Sound and Belfast and tbe company’s quarry at Nor- *387 ridgewock upon the theory that they were the property of one concern. There was entire lack of any formal arrangement, but the plaintiffs understood that they controlled one-third financial interest each in the entire property — Hall’s and the company’s; they understood, and so did their subordinates, that Stout, Hall & Bangs and the Maine Granite and Improvement Company were substantially one and the same, and, as Hall never transferred his property to the corporation, so Stout, Hall & Bangs never assumed to assign this contract to anyone, and were paid by the Government as Stout, Hall & Bangs, while the accounts were usually carried upon the books of the company, and the firm apparently kept no books.
Stout, Hall & Bangs agreed with the Hurricane Island Company that the latter should furnish a portion of the granite and receive as compensation such sum as the quantity of granite furnished by them should bear to the whole amount to be furnished under the contract. For certain portions of the building contemplated, Hurricane Island granite was better fitted than Norridgewock or Somes Sound stone. These different kinds of granite were specifically called for in the contract.
In all these facts, however, there is no evidence of an attempt to assign the contract. Plantiffs adopted business methods which suited them in carrying out their engagements; they did not seek to avoid responsibility toward the Government or to place another contractor in their place. A contractor has a right to make subcontracts; in the nature of things he must make them, for he must hire labor, buy material, procure transportation, and fulfill, through the agency of others, the duties imposed upon him by his undertaking. Hé inust not attempt to transfer his responsibility to the Government; the Government having selected him as the one with whom they wish to deal, he is not free to change that position. But he has a perfect right to fulfill his contract duties in the business manner which best pleases him, provided he retain his personal responsibility and achieve the required result.
The contracts or understandings with the Maine Granite or the Hurricane Company do not affect the recovery herein; those companies had and have no relations with defendants; they were plaintiffs’ instruments in fulfilling the contract; if *388 they have sustained any loss, tbey must look to plaintiffs for relief.
A subcontract, exactly like tbe one made witb tbe Hurricane Island Company, appears in Masterton v. The Mayor, and as to it Chief Justice Nelson said:
“Indeed I am unable to comprehend bow these can be taken into tbe account, or become tbe subject-matter of consideration at all, in settling the amount of damages to be recovered for a breach of tbe principal contract.”
Judgment suspended for a further revision of tbe itéms allowed.
Weldow and Peelle, JJ., did not sit in this case and took no part in tbe decision.